Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MRS. LUCY CLARK, Respondent, for Compensation under the Workmen's Compensation Law for the Death of Her Husband, JOHN C. CLARK, *v.* WILLIAM VOORHEES, Employer, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Appellants.

Third Department, November 18, 1920.

Workmen's Compensation Law — business of wholesale commission merchant within second group 45 of section 2 — injury arising out of and in course of employment — injury to salesman of wholesale produce commission merchant by automobile while crossing street to restaurant.

A wholesale produce commission merchant employing four or more people is covered by the second group 45 of section 2 of the Workmen's Compensation Law.

The claimant's husband, who was employed by a wholesale produce commission merchant and whose duties generally required him to be at the dock where produce came, received an injury arising out of and in the course of his employment where it appeared that at the time of the accident, which was caused by his being struck by an automobile while crossing the street, he was going with a customer to a restaurant to get some coffee and was also on his way toward the dock and other prospective customers, and was clothed in a coat which he wore while at work, it appearing also that it was customary for the men in that business, who commenced work in the night time, to go out to get coffee.

COCHRANE and H. T. KELLOGG, JJ., dissent.

APPEAL by the defendants, William Voorhees and another, from a decision and award of the State Industrial Commission, made on the 28th day of January, 1920.

*William Warren Dimmick,* for the appellants.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, *Bernard L. Shientag* and *Thomas L. Green* of counsel], for the respondents.

KILEY, J.:

This claim is presented under the second group 45 of section 2 of the Workmen's Compensation Law (as added by Laws of

1918, chap. 634). The award was in favor of the claimant and the finding in that regard made by the State Industrial Commission is as follows: " On May 30, 1918, while the said John C. Clark was engaged in the regular course of his employment, and at about four A. M. on that day, together with one Domenico Ercole, he left the plant of his employer to go to a nearby restaurant for the purpose of getting a cup of coffee, as was the custom among men engaged in the same or similar line of business, due to the nature of the work, and the hours at which the work is carried on in the business in which the deceased was employed, which practice was incidental to the employment of the deceased. While the said John C. Clark was engaged in the regular course of his employment, while attempting to cross the street at Chambers and Washington streets, New York city, for the purpose aforesaid, he was struck by a motor truck carrying United States mail, thereby sustaining a fracture of the sixth and twelfth left ribs, which caused internal hemorrhages, which brought about his death on that day." The employer was a wholesale produce commission merchant, the employment in which is not hazardous as that term is defined in the Workmen's Compensation Law (§ 3, subd. 1, as amd. by Laws of 1917, chap. 705), unless it comes under the last group 45 of section 2 of said law. Appellants' contentions are two: *First.* That the business in which claimant's husband was employed is not covered by the compensation statute. *Second.* That the accident did not arise out of and in the course of his employment. First taking these grounds in their numerical order as given above and as made at the time of the hearing, we will place the second group 45 of section 2 of the Workmen's Compensation Law before us: " Group 45. All other employments not hereinbefore enumerated carried on by any person, firm or corporation in which there are engaged or employed four or more workmen or operatives regularly, in the same business or in or about the same establishment, either upon the premises or at the plant or away from the plant of the employer, under any contract of hire, express or implied, oral or written, except farm laborers and domestic servants." As the exception " farm laborers " and " domestic servants " is made in the same amending statute it is not necessary to observe such class of service

is not intended to be covered by the preceding provisions of said second group 45 of section 2. The decision under this point turns upon what construction or interpretation we shall give to the words " workmen or operatives " found in the group. That this employer had four or more men at work in the business " or in or about the same establishment," does not admit of serious contradiction. The Attorney-General's opinion upon the meaning of these ambiguous words appears in the record, viz., " that the term ' workmen or operatives ' would not be held to include clerical or professional work but would be limited to those who do manual labor or were mechanics or artisans." It would be a violent stretch of the imagination to place the injured employee, in this case, under either of the heads excepted from the benefit of the statute, viz., " clerical or professional; " he was neither. Excluding the class excluded by the learned Attorney-General it is pertinent here to ask what class was intended to be covered, outside of the class already covered before the addition by the Legislature of this second group 45 in 1918. To reach a correct determination of the question under consideration, the purpose of the whole statute as well as this particular group must be kept constantly in view. Not a line of this statute takes away any beneficence or advantage the employee theretofore had; on the contrary, each change or addition has had in mind, as the purpose sought, to give to the laborer increased benefits, never enjoyed before; and as time demonstrated the necessity, in order to carry that purpose to full fruition, an increase of the classes of laborers to be benefited became the object. Second group 45 of section 2 is the latter kind of legislation solely. No other benefit or privilege is contemplated by that amendment made in 1918, which took effect on the thirteenth of May of that year. Definitions of " workmen or operatives " given under other statutes or in cases passed upon under other conditions are not conclusive, for the reason that this statute in its wide scope and general purpose has overreached all previous attempts. We may accept the limitation placed upon the class not conceived to be under this statute, and we are no nearer a solution if we stop there; because, as we have said before, the injured party here does not come within the prescribed class. *Dugan* v. *McArdle, Inc.*

(184 App. Div. 570; affd., 225 N. Y. 668), cited by appellants, is the case of a produce dealer. The alleged accident in that case occurred in 1916 before the amendment applicable here, and this amendment was not considered; groups 29 and 30 of section 2 (as amd. by Laws of 1916, chap. 622) were the only provisions discussed, except the amendment of 1917 (Chap. 705) to group 30 of section 2. *Matter of Gleisner* v. *Gross & Herbener* (170 App. Div. 37) was decided in 1915. *Matter of Bowne* v. *Bowne Co.* (221 N. Y. 28) was decided in 1917 and passed, adversely to claimant, upon the question whether employers who were officers of the corporation were covered by the Workmen's Compensation Law. The claimant in the last cited case suffered his injury in March, 1916, and under the law as it then existed he could not recover. On June 1, 1916 (Laws of 1916, chap. 622), section 54 was amended by adding subdivision 6 to that section, so that thereafter claimants similarly situated could recover; and discussion of the *Bowne* case here is profitable only to show the trend of the legislative mind toward the extension of classes to which the law can be applied. When it was said in *Matter of de la Gardelle* v. *Hampton Co.* (167 App. Div. 617), decided in 1915, " but it is no function of this court to extend by judicial determination the category of occupations entitled to the protection of the statute," there was no second group 45 of section 2. It is " a condition, not a theory," that confronts us here. Webster's Dictionary says an employee is " one employed by another;" this was the legislative idea of the word; as such it embraces workmen or operatives. Simultaneously the Legislature designated certain kinds of occupation as hazardous and said the benefits under this statute should extend to those only who were employed in those occupations; subsequently followed the enlargement of the occupations making benefits accruable and increasing the classes to which they should accrue. We are not left to conjecture nor abstract reasoning to reach a solution; the whole plan of the statute, its progress by amendment toward the ends sought and the statute itself, point to the intention of the Legislature to have workmen or operatives included in the term employee. Subdivision 4 of section 3 (as amd. by Laws of 1916, chap. 622) defines " employee " as follows: " ' Employee ' means a

person engaged in one of the occupations enumerated in section two *or* who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant, or in the course of his employment away from the plant of his employer; and shall not include farm laborers or domestic servants." (See, also, Laws of 1917, chap. 705, re-enacting said § 3, subd. 4.) It will be noted that there are several different positions in any one of which an employee may find himself when injured and still get compensation; we are concerned with only the first, the description of which stops at the first disjunctive " *or* " found in the subdivision. Second group 45 is in section 2 and no matter what the injured person is called in that group, under section 3, subdivision 4, he is an employee. This section and subdivision was the living statute when second group 45 of section 2 became a law. These provisions are so closely related that their relevancy to and dependency upon each other cannot be assumed to have been overlooked. It is my conclusion that the employer was covered by his insurance contract. I have only alluded to the fact that the employer had four or more workmen, working in and around his place of business; the evidence supports the finding in that regard. The second ground urged by appellant is that the accident and injuries to the decedent did not arise out of and in the course of his employment. (See Workmen's Compensation Law, § 10; Id. § 3, subd. 7, as amd. by Laws of 1917, chap. 705.) The difficulty with that contention is that the evidence, including the evidence of the employer, is that he was in his employ at the time he was injured. Work commenced in this plant at twelve o'clock midnight; claimant's husband got there about two or three o'clock that morning; took off his street coat and put on a long white coat such as were used by men in his position. He worked around the plant, as this was a holiday and the dock where he worked when produce came to the dock was closed. The head salesman said they kept the store or business place open on holidays to supply customers from the store; that salesmen went out to see if they could sell or deliver goods to retail places desiring them; this man went out and just before he was injured

another dealer in produce was inquiring of him if they had or would have celery that day; he says the man had on his business coat, long white coat, over his clothes, used only when he was at work; they started for a cup of coffee and in crossing the street he was struck by an automobile and received the injuries from which he died the same morning. A fair inference from this evidence is that he was the only man except the head salesman on the job that morning; that he had by close application to business inspired, acquired and held the confidence of his employer is manifest from the employer's evidence when he says, in effect, that he would take Clark's report at the close of the day's business without question. The evidence does not warrant the characterization of Clark's temporarily stepping aside for a cup of coffee as abandonment of his employment. He died with his working harness on, in the livery of his employer, and the stroke that killed came while he was discussing his employer's business with a patron who desired to purchase, if the commodity wanted by him was in stock and if not when it arrived at the dock. He was headed toward the dock and prospective customers when injured. The employer testified that the men ran out to get coffee when they wanted to do so, the practice was common, must have been so, with men who commenced work at midnight. That it was recognized by the employer as necessary to the efficiency of the men and incidental to the employment cannot admit of a doubt. To hold otherwise, we must hold he abandoned or finished his work for the day. Under the conditions appearing in the evidence the Commissioner's finding to the contrary finds support. While *Matter of McInerney* v. *B. & S. R. R. Corp.* (225 N. Y. 132); *Matter of Glatzl* v. *Stumpp* (220 id. 71); *Matter of Di Salvio* v. *Menihan Co.* (225 id. 125); *Matter of Heitz* v. *Ruppert* (218 id. 152); *Matter of De Voe* v. *N. Y. State Railways* (169 App. Div. 472; affd., 218 N. Y. 318); *Matter of Newman* v. *Newman* (169 App. Div. 747), and *Manor* v. *Pennington* (180 id. 132) all have some features in common with the case at bar, yet as a whole I do not think they point to error in the findings of the Commission here. Appellants quote from the opinion of Mr. Justice LYON in *Bylow* v. *St. Regis Paper Co.* (179 App. Div. 555). The award in that case was affirmed, the learned justice observing

in the course of his opinion, "Had the deceased once passed from his employer's premises and gained the public highway, or had he instead of leaving the employer's premises loitered thereon, or deviated from a direct and ordinary route of passage for purposes of his own, a very different question would be presented." Claimant's husband was still pursuing his employment; he was going toward the dock, or toward regular customers or looking for prospective customers; he had a customer with him; he was discussing his employer's business with that customer and in a way beneficial to his employer. Under these circumstances a finding covering these facts is amply sustained by this evidence, especially so under the provisions of sections 21 and 68 of said statute.

The award should be affirmed.

All concur, JOHN M. KELLOGG, P. J., with separate opinion, except COCHRANE and H. T. KELLOGG, JJ., dissenting.

JOHN M. KELLOGG, P. J. (concurring in result):

The classification of certain employments as hazardous under the Workmen's Compensation Law is an exercise of the police power and its validity depends upon whether there is a reasonable ground for determining that the employments so classified are more hazardous than other employments. The Legislature cannot act arbitrarily in imposing a burden upon an individual or a business. Its conclusion in a case may not seem the best one, but when it determines that there are facts to make it proper for it to pass judgment upon the question, and there is some reasonable basis for the conclusion, we are bound by its determination.

Before 1918 the employments denominated hazardous by the act were such as were or might be claimed to be inherently hazardous. The classification then depended entirely upon the nature of the work to be done and the dangers arising from it. Chapter 634 of the Laws of 1918 (adding to Workmen's Compensation Law, § 2, group 45) made a change, and for the first time declared a business hazardous not because of its inherent hazards but because of the number of persons employed in it. To be valid and impose a liability upon the employer, there must be some reason for saying that the number of

persons employed and not the nature of the business itself makes it hazardous. A person working alone in the shop of the employer, in a non-hazardous employment, with the fit tools and machinery which the law contemplates, ordinarily is only subject to accident arising from his own carelessness. The question is whether the risk of his employment is enhanced so that it may be called a hazardous employment because of the fact that instead of working alone he is working with a great many people. We are not without precedents upon this subject and the decision of the Court of Appeals of October, 1920, in *Matter of Leonbruno* v. *Champlain Silk Mills* (229 N. Y. 470) is important. There an employee in a factory lost the better part of his eye by being hit with an apple which a co-employee had thrown at him. He was not engaged in the horse-play but· was a victim of it. He was compensated. The court said: " The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work ' within the zone of special danger.' (*Thom* v. *Sinclair*, 1917 A. C. 127, 142.) Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. We think with KALISCH, J., in *Hulley* v. *Moosbrugger* (87 N. J. Law, 103), that it was ' but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment."

Second group 45, therefore, of hazardous employments must stand upon the hazards arising from the number of workers and not from the nature of the business itself. When we know the fact and purpose of an act we pretty well understand the legislative intent. The statute classifies as hazardous " all other employments not hereinbefore enumerated * * * in which there are

engaged or employed four or more workmen or operatives regularly." The hazard being declared solely on account of the number of persons, we are enabled to determine more easily what the words " workmen or operatives " mean.   I cannot agree with the prevailing opinion that this group does not apply to clerks or professional workers.   If the hazard comes from the number, does it make any difference whether the persons are clerks or common laborers; whether they are professional men or artisans?   The word " workman " has a broad scope.   The Century Dictionary treats it as meaning " in general, one who works in any department of physical or mental labor."   If we attempt to subdivide the classification and apply it to some employees and exclude others, we then abandon the theory that the number employed creates the hazard, and, in my judgment, destroy the statute.   Treating it, however, as relating to employments which engage four or more employees of any kind, the provision seems reasonable and valid.   If a classification be made on account of the number of employees, it is for the Legislature and not the court to determine what the number shall be.   I favor an affirmance.

Award affirmed.