HARRY COOK'S CASE.

Suffolk.    March 23, 1922. — January 11, 1923.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.    *Insurance*, Agent.

An insurance solicitor and collector, who had a specific route in a city where daily he made collections from policy holders and once each week under instructions from his employer went to its home office in another part of the city to make a report and to pay over his collections, his pay covering the time he spent in going to and from that office, in accordance with his usual custom boarded a street car for the purpose of making his weekly visit to the home office of his employer, having with him his collections for that week, and while he was stepping down from the front platform of the car, preparatory to leaving the car, his heel slipped and caught on the step and he was dragged on the ground before the car stopped. In a claim made by him under the workmen's compensation act it was *held*, that it could be found that the accident occurred in the course of and arose out of his employment. RUGG, C. J., CROSBY, & CARROLL, JJ., dissenting.

CERTIFICATION to the Superior Court, under the provisions of the workmen's compensation act, of a decision of the Industrial Accident Board that injuries received by Harry Cook, while in the employ of John Hancock Mutual Life Insurance Company, arose out of and in the course of his employment and that he was entitled to compensation therefor.

In the Superior Court, by order of *Sanderson*, J., a decree was entered in accordance with the decision of the Industrial Accident Board. The insurer appealed.

The case was argued at the bar in March, 1922, before *Rugg*, C. J., *Braley, De Courcy, Crosby, & Jenney*, JJ., and afterwards was submitted on briefs to all the Justices.

*G. Gleason*, for the insurer.

*W. B. Keenan*, for the claimant.

DE COURCY, J.    The salient facts established by the findings

of the board member, and affirmed and adopted by the Industrial Accident Board on review, are these: The employee, Harry A. Cook, was an insurance solicitor and collector in the employ of the subscriber, the John Hancock Mutual Life Insurance Company. For the past eight years he had a specific route in South Boston, where he daily made collections from policy holders. Every Thursday, in accordance with instructions received from his employer, he went to the home office of the company in Boston, made his weekly report on blanks there furnished to him, and paid over his collections. There was uncontradicted testimony that he was paid a salary and commissions, his pay covering the time he spent in going to and from said office. On Thursday, March 24, 1921, in accordance with his usual custom, he boarded a trolley car at South Boston for the purpose of going to the Boston home office of the company, having with him his collections for that week amounting to $146. When the car reached Dewey Square in Boston and was approaching the stopping post, and while he was stepping down from the front platform of the car, his heel slipped and caught on the step. He had hold of the hand rail, and was dragged on the ground about twenty yards before the car stopped. The Industrial Accident Board awarded him compensation for his injuries; and a decree of the Superior Court was entered in accordance therewith. The insurer appealed, contending that the board was not warranted as matter of law in finding that the accident arose out of and in the course of Cook's employment.

Plainly it could be found that the accident occurred in the course of his employment. In going to the Boston office on this Thursday morning Cook was performing a duty for which he was expressly employed and paid. A failure on his part to so report would have been sufficient ground for his discharge from the company's employment. This is not the case of an employee being injured after he has finished his day's work and left the employer's premises. See Bell's Case, 238 Mass. 46, and cases cited.

The only doubtful question is whether the board were warranted in finding that the injury arose out of Cook's employment. It is often stated as a general rule that an injury cannot be said to arise out of the employment of the injured workman where it

occurs upon a street from causes to which all other persons upon the street are likewise exposed. See L. R. A. 1916 A 314 note. But no such formula or general statement can afford a solution without reference to the circumstances of each case. When the public street is the employee's place of work it becomes virtually his workshop, and he may be exposed to the dangers incident to the use of the streets in the same manner that a factory workman is subjected to the perils of the factory. In some instances such exposure to the ordinary "street risks" is inherent in the very nature of the employment; in others the particular work that is being performed by the employee when injured may compel him to face those risks in the course of his contract of employment. When these hazards thus become connected with and incidental to the employment, and are the direct cause of the accident, such accidents arise out of, as well as in the course of the employment. And the fact that others, engaged in their own affairs, are more or less exposed to the same street risks, does not preclude recovery by an employee who is necessarily exposed to them in performing the duties of his employment contract.

There is nothing in the language or purpose of our workmen's compensation act to indicate that the Legislature intended to exclude from its benefits the numerous body of men engaged in out of door employments. Among those generally recognized as coming within the compensation acts are teamsters, drivers and chauffeurs, injured upon the street; the following recent cases being illustrations: *Keaney's Case*, 232 Mass. 532. *Burton Auto Transfer Co.* v. *Industrial Accident Commission*, 37 Cal. App. 657. *Mahowald* v. *Thompson-Starrett Co.* 134 Minn. 113. *Miller* v. *Taylor*, 173 App. Div. (N. Y.) 865. *Sztorc* v. *James H. Stansbury, Inc.* 189 App. Div. (N. Y.) 388. *Martin* v. *Lovibond & Sons, Ltd.* [1914] 2 K. B. 227. 12 Negl. & Comp. Cas. Ann. 174 note. Again the act is often applied to employees whose duty it is to use the street as messengers or delivery men. *Globe Indemnity Co.* v. *Industrial Accident Commission*, 36 Cal. App. 280. *McDonald* v. *Great Atlantic & Pacific Tea Co.* 95 Conn. 160. *Republic Iron & Steel Co.* v. *Industrial Commission*, 302 Ill. 401. *Beaudry* v. *Watkins*, 191 Mich. 445. *Hansen* v. *Northwestern Fuel Co.* 144 Minn. 105. *Employers' Indemnity Corp.* v. *Kirkpatrick* (Tex. Civil App.) 214 S. W. Rep. 956. *Dennis* v. *A. J. White & Co.*

[1917] A. C. 479. Travelling salesmen, canvassers and collectors also may come within the protection of the statute. *Stansberry* v. *Monitor Stove Co.* 150 Minn. 1. *Bachman* v. *Waterman*, 68 Ind. App. 580. *Clark* v. *Voorhees*, 184 N. Y. Supp. 888. *Mulford* v. *A. S. Pettit & Sons, Inc.* 220 N. Y. 540. *Schroeder & Daly Co.* v. *Industrial Commission*, 169 Wis. 567. *Moran's Case*, 234 Mass. 566. *Pierce* v. *Provident Clothing & Supply Co. Ltd.* [1911] 1 K. B. 997. *Millar* v. *Refuge Assurance Co. Ltd.* [1912] Sess. Cas. (Sc.) 37. And there are many reported cases where the workman was injured while using the street away from the plant of his employer, but while engaged in the line of his duty. *Mueller Construction Co.* v. *Industrial Board*, 283 Ill. 148. *Kunze* v. *Detroit Shade Tree Co.* 192 Mich. 435. *Zabriskie* v. *Erie Railroad*, 86 N. J. L. 266. *Milwaukee* v. *Althoff*, 156 Wis. 68.

It is not material whether such injured workman is using the street on foot, or in a public or private vehicle, provided he does not thereby subject himself to some added and unauthorized peril. As was said by Lord Finlay, L. C., in *Dennis* v. *A. J. White & Co. supra*, "If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment." It frequently happens that the employer furnishes transportation for the workmen to and from their work, as an incident of the employment; and an injury suffered by the employee while so travelling is generally held to arise out of the employment. *Donovan's Case*, 217 Mass. 76. *Littler* v. *George A. Fuller Co.* 223 N. Y. 369. *Harrison* v. *Central Construction Corp.* 135 Md. 170. *Hackley-Phelps-Bonnell Co.* v. *Industrial Commission*, 165 Wis. 586. See other cases collected in note, 10 A. L. R. 169. See also *Latter's Case*, 238 Mass. 326. Others, especially travelling salesmen, are often obliged to travel in public conveyances in the course of their employment. The protection of the compensation act is not necessarily suspended while such an employee is a passenger in the car or ship of a common carrier. *Kinsman* v. *Hartford Courant Co.* 94 Conn. 156. *Foley* v. *Home Rubber Co.* 89 N. J. L. 474. *Central Construction Corp.* v. *Harrison*, 137 Md. 256. If the carrier is under legal liability for causing the injury, the injured employee may at

his option proceed against the carrier to recover damages, or against the insurer for compensation. G. L. c. 152, § 15.

In view of the foregoing principles and authorities, it seems to us that the Industrial Accident Board were warranted in finding that the injury suffered by Cook arose out of his employment. They would unquestionably be justified in so finding if Cook had been struck by an automobile while he was necessarily crossing a street, on his prescribed route in South Boston, in the performance of his duty of soliciting insurance. The same would be true if a similar accident happened while he was walking to the home office in Boston, in pursuance of the orders of his employer to do so, and while under its pay therefor. If, in order to save time which belonged to his employer, he took an electric car to Boston, and was injured in a collision, the accident board would not be precluded as matter of law from finding that the injury arose out of his employment. The fact that in the case at bar the injury arose while Cook was alighting from the car does not render the relation between that injury and his employment so remote as to preclude a legitimate inference that the risk from which he suffered was incidental to his employment, and arose out of it.

The facts bring this case within the authority of *Moran's Case*, *supra*. Moran also was a solicitor and collector in the employ of the John Hancock Mutual Life Insurance Company, and he was struck by an electric car which he was intending to board. On the other hand it is distinguishable from *Hewitt's Case*, 225 Mass. 1. Hewitt was in the general insurance business, with an office of his own in Taunton. The fact that he would obtain a commission if he induced his companion on the trip to Providence to take out a policy of insurance in the John Hancock Life Insurance Company, did not make him an employee of that company. As pointed out in the opinion, the accident did not occur in pursuance of any work which he was then and there obliged to perform for that company. *Donahue's Case*, 226 Mass. 595, relied on by the insurer, was decided on the ground that "As the hazard of slipping on the ice in the street was not a causative danger peculiar to the claimant's employment, the injury received could not properly be found to have arisen out of the employment." *Braley's Case*, 237 Mass. 105, expressly recognized the authority of *Moran's Case*. But it held that the turning of the claimant's

ankle, which caused the injury, was not shown to be attributable to any risk or hazard of his employment.

In the opinion of a majority of the court, the decree of the Superior Court should be affirmed.

*Ordered accordingly.*


The Chief Justice and Justices Crosby and Carroll feel constrained to express their dissent from the opinion of the majority of the court. It is their firm conviction that the facts of the case at bar bring it directly within the authority of three of our decisions under the workmen's compensation act. The facts here are that the claimant was an insurance solicitor for the John Hancock Mutual Life Insurance Company. He walked about his district, which covered definite streets in South Boston, making collections of premiums from those insured. He also solicited new insurance. Once each week he had to take his collections to the home office and settle his accounts there. He selected the car, route and precise time of going to the home office. He might have used any other appropriate means of transportation as well as a street car. He was riding on a street car on his way to make one of these weekly visits when he received injury. It happened in this way: "When he was getting ready to get off the car, his heel slipped and caught on the step. He was dragged along. . . . Before the accident he had been riding on the front platform. . . . His heel slipped and then he was dragged. He was not going to get off the car without it stopping; that he was getting ready to be on the lower step."

The three decisions which we regard as completely concluding the case at bar in every essential particular are *Hewitt's Case,* 225 Mass. 1, *Donahue's Case,* 226 Mass. 595, and *Braley's Case,* 237 Mass. 105.

The claimant in *Hewitt's Case* was also an agent for the John Hancock Mutual Life Insurance Company. He was injured by the overturn of an automobile upon which he was riding for the purpose of inducing its driver to buy insurance and who just before the accident had agreed to take a policy. It was said in the opinion that in taking the ride Hewitt "plainly did not leave the field within which he was authorized to work for his employer." He was injured by one of the ordinary perils of modern travel.

But he was denied recovery because "The danger incident to the use of an automobile is not a 'causative danger' 'peculiar to the work,' but is a risk which is common to all persons using one." 225 Mass. 2, 3. The pertinent facts in *Donahue's Case* were that the claimant was a travelling salesman. The undisputed evidence showed that while he "was walking along the street in the course of his employment on his way to the electric car line, he slipped upon the ice and received the injury for which he" sought compensation. The essence of that decision was that "the danger of the employee slipping upon the ice in a public street was not peculiar to his work, but was a hazard common to persons engaged in any employment who had occasion to travel along the streets." 226 Mass. 597. In *Braley's Case* also the claimant was a collector in the employ of an insurance company on his way by street car to the office of the company pursuant to his employment. The facts are stated in the opinion as follows: "When he stepped to the ground [from the street car] his ankle turned over. It does not appear what caused his ankle to turn. . . . The turning of an ankle is an extremely common event and may be caused by conditions of individual weakness or of the physical surface of the way. In the case at bar there is no evidence upon which it can be said to have been proved that the accident was attributable to the risk or hazard of the work of the claimant, and not to his individual peculiarities or weaknesses." We are unable to distinguish any one of these cases from the case at bar. Their collective force as authorities is very great. Thereby the force of the rule of *stare decisis* is multiplied.

In *Moran's Case*, 234 Mass. 566, the claimant was sent to solicit ordinary insurance which his superior officer desired him to obtain on that day, and in the evening while running to catch a car was injured by being struck by the fender of a moving car. That was held to be a risk of the employment. It is no more difficult to distinguish *Moran's Case* from the case at bar than from *Braley's Case*. It was distinguished in the opinion in *Braley's Case,* which is a more recent decision. By the same reasoning and on the same ground it is distinguishable from the case at bar. The present case is so plainly different from *Keaney's Case*, 232 Mass. 532, as to require no discussion. That decision was not even cited in *Braley's Case*.

It hardly seems necessary to examine cases in other jurisdictions when our own decisions are so apposite. Several English cases cited as supporting authorities in the opinion in *Hewitt's Case* have been overruled in *Dennis* v. *A. J. White & Co.* [1917] A. C. 479. But manifestly that is no ground for not following our decisions unless its persuasive reasoning compels us to that result. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 196.

The cases of Hewitt, Donahue and Braley were rightly decided. They all are recent cases, the earliest having been decided barely six years ago and the last less than two years ago. They stand as the adjudications of the court. They are not overruled. The attempt to distinguish them from the case at bar will introduce confusion in the administration of the workmen's compensation act, which ought to be made as simple as possible.

The history of the workmen's compensation act shows that it was not intended to include within its scope the ordinary injury occurring in street cars. Chapter 120 of the Res. of 1910, whereby provision was made for the appointment of a commission to investigate the subject, recites that a change is required "in the present system of determining the compensation of employees for injuries sustained in industrial accidents, and that the Commonwealth ought to provide different and more suitable relief." The commission appointed pursuant to that resolve, in submitting the draft act subsequently enacted into the law with few changes, said: "The basic principle of the act is that the cost of injuries incidental to modern industry should be treated as a part of the cost of production." Report of Commission on Compensation for Industrial Accidents (1912) 46. That the act was intended to be in a general sense a substitute for pre-existing law is apparent from provisions to the effect that subscribers under the act are relieved from the provisions of the employers' liability act while all other employers of labor (with exceptions not here material) remain subject to that act. Certain defences were taken away from employers who chose not to become subscribers under the act. St. 1911, c. 751, Part I, §§ 1, 2, 3, 4. While the act is given a liberal interpretation, it seems to us unlikely that the Legislature intended to afford relief to an employee riding on a street car, when left freedom of choice as to particular car, time or route.

It does not seem to us that the utmost extension of any fair meaning of "industrial accidents" or "injuries incidental to modern industry" can include an injury such as is here in issue. This is an accident of the kind commonly encountered by those who patronize common carriers. It is difficult to see how it has any relation to industry. We think that the decree should be reversed and a decree be entered in favor of the insurer.