## NORMAN K. MORSE'S CASE.

Suffolk.     December 4, 27, 1929. — January 29, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.     *Motor Vehicle,* Operation.     *Words,* "Ordinary risk of the street."

The phrase, "ordinary risk of the street," as used in G. L. c. 152, § 26, as amended by St. 1927, c. 309, § 3, means common, customary or usual risk, and is not intended to include every street risk.

The provisions of G. L. c. 152, § 26, as amended by St. 1927, c. 309, § 3, do not apply to an injury received by an employee of a subscriber under the workmen's compensation act who was killed as a consequence of driving an automobile at a speed of sixty miles an hour along a level, straight road into a truck parked by the side of the road which was clearly visible for a distance of more than five hundred feet.

CERTIFICATION under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to the widow of Norman K. Morse, whose death was caused in the circumstances described in the opinion.

In the Superior Court, the case was heard by *Cox,* J., by whose order a decree was entered awarding compensation. The insurer appealed.

*G. Gleason,* for the insurer.

*F. M. Myers,* for the claimant.

PIERCE, J.     This is an appeal by the insurer from a decree of the Superior Court affirming a decision of the Industrial Accident Board.

Norman K. Morse was killed on the evening of October 8, 1928, at Lenox, Massachusetts, while driving a registered automobile, owned by him, south on the main highway between Lenox and Stockbridge.     He had been treasurer and director of the subscriber since its incorporation on January 26, 1927.     On the day of his death he was treasurer, salesman and manager of the company, which dealt in trucks.     On the evening of October 8, 1928, Morse told

his wife that he was going to Great Barrington to try to sell a truck to a man by the name of Mercer who had inquired about one, and asked her if she had any objection to his using the automobile he subsequently drove. He told her he was going over to a garage to get some gasolene before he started; that he would leave the car owned by the company, in which he had driven to his home, in his garage and take his own car. He left the car owned by the company in his garage when he started for Great Barrington.

Two questions are raised by the insurer: (1) Was Morse an independent contractor and not an employee as to the operation of his own automobile at the time of the accident; and (2) If Morse was an employee did the injury arise out of and in the course of the employment?

The cause of the death of Morse was a collision between the car which he was driving and a truck loaded with two and one half by twelve inch pine planks. Many planks stuck out at various distances from the rear of the truck ranging from six to twelve inches, exclusive of one very long plank that was situated on the extreme left hand side, midway of the load and five feet above the ground, which protruded forty-one inches beyond the end of the truck. There were electric or acetylene lights on the truck, the left rear light being electric, but there was no flag on the long plank. At the time and place of the accident the truck was parallel with the road; it was on the extreme westerly edge, facing south, and was at a standstill under an arc light with the driver on top doing some sort of work. The width of the road was approximately eighteen feet concrete surface, with a two and one half foot shoulder on each side of the road. From the point where the truck was parked the unobstructed view in a northerly direction was five hundred feet at least. Approaching on the westerly side from the north one could see the truck "anywhere from one thousand feet to a quarter of a mile." The road where the accident happened was of concrete, dry, free from other traffic, and was straight for an approximate distance of five hundred feet north and a quarter of a mile

south of the scene of the accident. The night was clear, the stars were shining, and there was a moon.

A State trooper testified, in substance, that as he was coming from Stockbridge on the Lenox Highway he saw the truck with a man on top, parked under an arc light, when he was five hundred feet back; that the truck was headed south and he was going north; that he proceeded on his right side of the road and then just as he was passing the truck "he heard a terrible screeching of brakes"; that he pulled his car away and was nearly off the highway when his right rear fender was hit by the rear fender of the Morse car; that he stopped his car, got out, looked into the Morse car and saw the big piece of timber piercing the skull of Morse. The witness saw marks on the road from where the Morse car had been proceeding. The marks are described in the testimony of a supervisor and inspector of motor vehicles, who was sent for and arrived shortly after the accident. The evidence of the witness discloses that there were two track marks that began at the rear wheels of the Morse car as it stood diagonally across the highway and continued back in a northerly direction a distance of three hundred feet; that those marks indicated that Morse applied his brakes lightly three hundred feet from the truck, and coming toward the truck such marks existed for fifty feet; that he then applied his brakes vigorously, burning the concrete; that they were applied with such force as to keep the wheels from turning; that at the end of one hundred fifty-five feet the brakes were released to some degree and the scorching ended, but the ground indicated that the brakes were applied with less force. It also appeared that Morse endeavored to pass the truck; that the radiator and hood avoided the truck and the collision occurred at a point on Morse's car where the right windshield post is attached, which indicated that Morse misjudged his distance or his speed or both.

The evidence of the State officer who was an eye witness to the accident, that Morse was driving at a very fast rate of speed; and of a witness whose car Morse passed just before the accident occurred, that Morse was driving be-

tween sixty and seventy miles an hour, justified the report of the trial judge at the inquest that the real cause of the accident was an unusual and excessive rate of speed of the Morse car.

Putting to one side, without decision, the question whether in the circumstances of this case Morse in the operation of his own car was an employee of the subscriber at the time of the accident, see *Hewitt's Case*, 225 Mass. 1, *Pyyny* v. *Loose-Wiles Biscuit Co.* 253 Mass. 574, *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, *Bradley's Case*, 269 Mass. 399, we pass to the question whether the injury arose out of and in the course of Morse's employment. The injury received by Morse clearly arose out of a "risk of the street"; and the hazard of that risk was not contemplated by his contract of employment unless the personal injury received by him was one "arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer." St. 1927, c. 309, § 3. *Hewitt's Case, supra.* *Colarullo's Case*, 258 Mass. 521. It is plain that the Legislature did not intend by St. 1927, c. 309, § 3, to cover every street risk, and that it did intend that the phrase "ordinary risk" should mean common, customary or usual risk. So interpreted, the words "ordinary risk of the street" are not applicable to the injury received by Morse as a consequence of driving his car, at a speed of sixty miles an hour along a level, straight road, into a truck parked by the side of the road which was clearly visible for a distance of more than five hundred feet.

It results that the decree must be reversed and a decree entered for the insurer.

*So ordered.*