ERIC HIGGINS'S CASE.

Suffolk.    May 9, 1933. — November 1, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, DONAHUE, &
LUMMUS, JJ.

*Workmen's Compensation Act*, To whom act applies; Injuries to which
act applies: street risks. *Statute*, Construction, Amendment. *Con-
tract,* Of employment. *Agency*, What constitutes, Independent con-
tractor. *Words*, "Ordinary risk of the street."

Where, in proceedings under the workmen's compensation act, it ap-
peared that the claimant was hired by the subscriber to install oil
burners in the houses of the subscriber's customers, to do service
work on burners which he had not installed, and to collect money for
the subscriber; that he occasionally did a little incidental work for
customers, and was paid therefor, "on his own"; that while doing
the work for which he was hired he was subject to the directions of
a representative of the subscriber as to where to go to work; and
that, whenever he finished a job, he telephoned to the subscriber's
representative for further directions or returned to the subscriber's
place of business, a finding was warranted that, as to his work gen-
erally, the claimant was an employee of the subscriber rather than
an independent contractor.

It further appearing in the proceedings above described that the claim-
ant was required to use his automobile at his own expense to travel
on the highways to and from the places where he did jobs for the
subscriber, it was *held*, that he was an employee of the subscriber
while so travelling and with respect to such operation of the auto-
mobile by reason of St. 1930, c. 205, now a part of G. L. (Ter. Ed.)
c. 152, § 26.

It *was stated* that, for injuries which said claimant received in 1932 when,
while he was so travelling in his automobile, it took fire, he lost con-
trol of it and it struck a tree, he would not have been entitled to com-
pensation under the law as it existed previous to the enactment of
St. 1927, c. 309, § 3, now part of G. L. (Ter. Ed.) c. 152, § 26, because
of a lack of causal connection between his employment and his injuries.

The word "ordinary" in the phrase "an ordinary risk of the street"
in said § 3, does not confine the risks to which the statute applies to
those which are not extraordinary nor unusual; the "risk[s] of the
street" within the scope of the statute are those which do not have a
causal connection with the employment of the one assuming them,
as contrasted with and complementary to those risks which do have
a causal connection with the employment, injuries arising out of
which therefore were compensable under the workmen's compensa-
tion act previous to the enactment of said § 3. RUGG, C.J., CROSBY,
& PIERCE, JJ., dissenting.

The injuries sustained by the claimant in the circumstances above described arose out of "an ordinary risk of the street" within the meaning of said § 3; and, having been sustained in the course of the claimant's employment by the subscriber, an award of compensation was proper. RUGG, C.J., CROSBY, & PIERCE, JJ., dissenting.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material facts are stated in the opinion. By order of *Whiting,* J., a decree was entered in the Superior Court in accordance with the board's decision. The insurer appealed.

The case was argued at the bar in May, 1933, before *Rugg,* C.J., *Pierce, Wait, Field,* & *Lummus,* JJ., and afterwards was submitted on briefs to all the Justices.

*G. Gleason,* for the insurer.

*A. P. Sleeper,* for the claimant.

LUMMUS, J. The first question is whether the claimant was an "Employee" under G. L. (Ter. Ed.) c. 152, § 1, or an independent contractor. He was hired by Sears, Roebuck and Co. to install oil burners in the houses of their customers. Some customers paid Sears, Roebuck and Co. for installation, and others received installation free. Sears, Roebuck and Co. paid the claimant, upon presentation of his account, at the rate of $3 a burner and $2 a coil. One Levy, acting for Sears, Roebuck and Co., told him where to go to do work. The claimant was required to have his own automobile with which to travel to jobs at his own expense. He was one of several "service men" working for Sears, Roebuck and Co., some of whom worked on a salary basis but with similar duties. As often as three or four times a week the claimant was sent out to do service work on burners that he had not installed. On C. O. D. orders he collected money and turned it in. Whenever he finished a job he telephoned Levy for further directions or returned to the store. Rarely he did a little incidental work for a customer, not included in the installation, and received pay from the customer "on his own," but he had little time for such work. On these facts the finding of the Industrial Accident Board that the claimant was an

employee and not an independent contractor cannot be pronounced wrong. *McAllister's Case*, 229 Mass. 193. See also *McDermott's Case*, 283 Mass. 74.

The injury in the present case, however, occurred not while the claimant was working on a job, but while he was travelling on the highway in his automobile on March 5, 1932, from a finished job to the store of Sears, Roebuck and Co., in pursuance of his duty to return to the store when not otherwise assigned. His automobile caught fire without apparent reason, and that caused him to lose control of the automobile and to run into a tree, which resulted in serious bodily injury. Prior to the amendment to G. L. c. 152, § 26, introduced by St. 1930, c. 205 (now forming part of the last sentence of G. L. [Ter. Ed.] c. 152, § 26), a person in the position of the claimant, while operating his own automobile on the highway, was deemed an independent contractor and not an employee with reference to that operation, although he might have been an employee with respect to other parts of his work; but under that amendment the claimant remained an employee while operating his automobile "with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer." See *Manley's Case*, 280 Mass. 331.

Yet it is not enough to entitle the claimant to compensation, to show that he remained an employee while operating his automobile. The original workmen's compensation act, St. 1911, c. 751, Part II, § 1, gave compensation to an employee only for a personal injury "arising out of and in the course of his employment"; and these words still remain the principal test of a compensable injury. G. L. (Ter. Ed.) c. 152, § 26. Compensation has often been denied an employee sustaining an injury while at work at his station, because of a lack of causal relation between the employment and the injury. *Harbroe's Case*, 223 Mass. 139. *Sanderson's Case*, 224 Mass. 558. *Murphy's Case*, 230 Mass. 99. *Dougherty's Case*, 238 Mass. 456. *Lee's Case*, 240 Mass. 473. *Feldman's Case*, 240 Mass. 555. *Cinmino's Case*, 251 Mass. 158. In *McNicol's Case*, 215

Mass. 497, 498, 499, the court said, "In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough. . . . An injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . The causative danger must be peculiar to the work and not common to the neighborhood. . . . It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." In *Sponatski's Case,* 220 Mass. 526, 531, the court further said, "It is of no significance whether the precise physical harm was the natural and probable or the abnormal and inconceivable consequence of the employment. The single inquiry is whether in truth it did arise out of and in the course of that employment." See also *Reithel's Case,* 222 Mass. 163, 165; *Belanger's Case,* 274 Mass. 371.

Where an employee works in the street, as a teamster does, a causal connection between his employment and a risk of the street is not hard to find. *Keaney's Case,* 232 Mass. 532. *Moran's Case,* 234 Mass. 566, explained in the dissenting opinion in *Cook's Case,* 243 Mass. 572, 578, which became substantially the prevailing opinion in *Colarullo's Case,* 258 Mass. 521. *Gardner's Case,* 247 Mass. 308, 310. See also *Mannix's Case,* 264 Mass. 584. If an employer, in performance of one of the express or implied terms of the employment, furnishes vehicular transportation to an employee, an injury during that transportation has been held to arise "out of and in the course of his employment." *Donovan's Case,* 217 Mass. 76. *Gilbert's Case,* 253 Mass. 538. *Vogel's Case,* 257 Mass. 3. *Johnson's Case,* 258 Mass. 489, 493. *Lee's Case,* 279 Mass. 357. See also *Ross* v. *John Hancock Mutual Life Ins. Co.* 222 Mass. 560; *White* v.

*E. T. Slattery Co.* 236 Mass. 28. The street risk cases in which compensation has been denied go on the ground that an employee in an employment that requires travel in the street, when injured by a street risk to which travellers not so employed are equally exposed, fails to show a causal connection between his employment and his injury. *Colarullo's Case,* 258 Mass. 521, and cases cited. *Carlstrom's Case,* 264 Mass. 493. *Wamboldt's Case,* 265 Mass. 300. *Morse's Case,* 270 Mass. 276. In *Hewitt's Case,* 225 Mass. 1, compensation was denied to a salesman injured by the overturning of an automobile in which he was riding. Plainly, the claimant would not have been entitled to compensation under the law as it existed prior to the amendment of 1927.

St. 1927, c. 309, § 3 (now part of G. L. [Ter. Ed.] c. 152, § 26), inserted in the statute, as an additional class of compensable personal injuries to an employee, those "arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer, and whether within or without the commonwealth." The present case turns upon the construction of the amendment of 1927. Its legislative history is not significant, for the language of the amendment as enacted was substituted in the Senate (Senate No. 298, § 3) for a bill (House No. 999; Senate No. 239, § 2) which contained no particular reference to street risks but provided for compensation whenever an employee receives personal injury "while . . . actually engaged in . . . the business, affairs, or undertakings of the employer." The insurer contends that the risk which caused the injury in the present case was not "ordinary," but extraordinary and unusual, and not within the amendment of 1927 as construed in the opinion in *Morse's Case,* 270 Mass. 276; with the result that the rule allowing no compensation for injury resulting from risks of travel in the street, illustrated by *Colarullo's Case,* 258 Mass. 521, still applies to preclude compensation. But there are grave objections to such a construction of the amendment of 1927. In the first place, it would open in cases falling

within the amendment a troublesome and novel question as to the frequency and likelihood of occurrence of such an injury, whereas under the original act the only test is actual causal relation. Furthermore, since the amendment of 1927 clearly had the general purpose of getting rid of the rule allowing no compensation for injury resulting from risks of travel in the street, illustrated by *Colarullo's Case*, 258 Mass. 521, a legislative intent to preserve any remnant of that rule appears unlikely. The very risks of travel which were declared noncompensable in that case were sometimes described, prior to the amendment, as "ordinary" risks of the street. See *Cook's Case*, 243 Mass. 572, 574, and (dissenting opinion) 577. We think that the word "ordinary" in the amendment of 1927 was not intended to restrict the street risks made compensable thereby to those which were not extraordinary nor unusual. The antithesis intended was of phrases rather than of single words. The Legislature spoke of the ordinary risks of the street as contrasted with, and as complementary to, the street risks peculiar to the employment, which had always been compensable. The purpose of the amendment was to bring both classes within the act.

*Decree affirmed.*

The Chief Justice and Justices Crosby and Pierce are unable to agree with the interpretation given in the prevailing opinion to the words added to the earlier statute by St. 1927, c. 309, § 3, and now found in G. L. (Ter. Ed.) c. 152, § 26. They feel constrained to express their dissent because that interpretation seems to them to violate a settled rule of statutory construction from which this court is not at liberty to depart and because that interpretation in effect overrules the one given to the same statutory words in *Morse's Case*, 270 Mass. 276.

1. No principle of law is more firmly fixed than this, that "it is an anciently established rule in the interpretation of statutes, that such a sense is to be made upon the whole statute, that no clause, sentence or word shall prove superfluous, void or insignificant, if, by any other con-

struction they may all be made useful and pertinent."
*Commonwealth* v. *McCaughey*, 9 Gray, 296, 297. That
rule has been consistently followed. *Baker* v. *Chisholm*,
268 Mass. 1, 6. *Libby* v. *New York, New Haven & Hartford
Railroad*, 273 Mass. 522, 526. *Opinion of the Justices*, 275
Mass. 575, 578. *DeBlois* v. *Commissioner of Corporations
& Taxation*, 276 Mass. 437, 438. *Paquette* v. *Fall River*,
278 Mass. 172, 176–177. That principle has been forcibly
stated in *Old Colony Railroad* v. *Commissioner of Internal
Revenue*, 284 U. S. 552, at page 560, where it is said that
the rule to be applied in the interpretation of statutes "is
established by many decisions. 'The legislature must be
presumed to use words in their known and ordinary signi-
fication.' *Levy's Lessee* v. *McCartee*, 6 Pet. 102, 110. 'The
popular or received import of words furnishes the general
rule for the interpretation of public laws.' *Maillard* v. *Law-
rence*, 16 How. 251, 261. And see *United States* v. *Buffalo
Gas Co.* 172 U. S. 339, 341; *United States* v. *First Nat.
Bank*, 234 U. S. 245, 258; *Caminetti* v. *United States*, 242
U. S. 470, 485. As was said in *Lynch* v. *Alworth-Stephens
Co.*, 267 U. S. 364, 370, 'the plain, obvious and rational
meaning of a statute is always to be preferred to any curious,
narrow, hidden sense that nothing but the exigency of a
hard case and the ingenuity and study of an acute and
powerful intellect would discover.'" There is no way of
ascertaining the meaning of a statute and effectuating the
purpose of the Legislature in enacting it except by careful
examination of all its words and by giving to all of them
force and effect according to their correct meaning.

Before the amendment added by St. 1927, c. 309, § 3,
it had been held that an employee injured while travelling
upon a highway as an incident of his employment was not
compensable under the workmen's compensation act on
the ground that, as all persons travelling upon streets are
exposed to such hazard, the danger was not a "causative
danger" "peculiar to the work," but was a risk common
to the general travelling public. *Hewitt's Case*, 225 Mass.
1, 3, and cases cited. *Colarullo's Case*, 258 Mass. 521, 522.
The distinction between ordinary and extraordinary risks

of the street did not enter into the discussion in those decisions or form the basis of them. Where, however, the place of employment was the street, as is that of a teamster, it had been held that an injury received on the street was causally related to the employment and was compensable under the workmen's compensation act. *Keaney's Case*, 232 Mass. 532. In the latter case it would have been of no consequence whether the injury arose from ordinary risks of the street or from exceptional and uncommon risks of the street. So long as it arose out of and in the course of the employment in the sense that it had a causal connection with the employment, it was compensable. *Sponatski's Case*, 220 Mass. 526, 531. The class of employees whose place of employment was the street was by no means negligible, but included, beside teamsters and truckmen, numerous municipal employees.

It was in that state of the decisions that the General Court enacted the amendment, St. 1927, c. 309, § 3, adding to injuries received by an employee otherwise compensable under the act those "arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer." This amendment extended the workmen's compensation act to a new class of injuries. The qualifying word "ordinary" was used. It would have been easy to omit that word if it had not been intended that meaning be given to it. An amendment making compensable injuries "arising out of a risk of the street" would have been simple. It would have been easy to interpret and apply to cases as they arise. The omission of the word "ordinary" from the amending statute would have made compensable every injury received from a risk of the street while the employee was engaged by the authorization of his employer in the latter's business or undertakings. It must be presumed that the word "ordinary" was inserted in the statute with the purpose that it should be given effect by those charged with the duty of passing upon claims for compensation. It is enacted by G. L. (Ter. Ed.) c. 4, § 6, Third, that in interpreting statutes "Words and

phrases shall be construed according to the common and approved usage of the language . . . ." That rule, of course, is binding upon courts. *Boston & Maine Railroad* v. *Billerica*, 262 Mass. 439, 444. Scarcely any word has a more common and approved usage in the speech of mankind than "ordinary." It means the usual, common, general, customary. It signifies the opposite of rare, uncommon, exceptional, extraordinary, unusual. Lexicographers agree as to this meaning. This meaning of the word is part of the fiber of the law in such phrases as ordinary care, ordinary prudence, ordinary negligence, ordinary conduct, ordinary course of business, and in others. It is a word which courts and juries are frequently required to apply to everyday affairs.

The meaning of the amendment as phrased in the statute appears so free from doubt that reference to legislative history is unnecessary. It is not without significance, however, that the General Court of 1927 had before it the report of a special commission appointed pursuant to Res. 1926, c. 36, for the purpose of investigating the effect of the workmen's compensation act in order to ascertain and cure its defects. That report was House No. 999 of 1927. It recommended the enactment of an amendment to G. L. c. 152, § 26, making compensable "an injury sustained while the employee is actually engaged in the furtherance of the business, affairs, or undertakings of the employer, whether upon the employer's premises or elsewhere." That recommendation was not adopted. Manifestly, the General Court deliberately rejected the broad extension of compensable injuries recommended by the commission and enacted a more limited extension. This affords strong reason to believe that the words of limitation in the amendment were intelligently and intentionally used to accomplish a deliberate design.

2. The meaning and scope of the words added to G. L. c. 152, § 26, by St. 1927, c. 309, § 3, were presented to this court for decision in *Morse's Case*, 270 Mass. 276. In that case the employee was actually engaged by his employer's authority in its business affairs and was driving an auto-

mobile on a highway. It was there said: "The injury received by Morse clearly arose out of a 'risk of the street'; and the hazard of that risk was not contemplated by his contract of employment unless the personal injury received by him was one 'arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer.' St. 1927, c. 309, § 3. . . . It is plain that the Legislature did not intend by St. 1927, c. 309, § 3, to cover every street risk, and that it did intend that the phrase 'ordinary risk' should mean common, customary or usual risk. So interpreted, the words 'ordinary risk of the street' are not applicable to the injury received by Morse as a consequence of driving his car, at a speed of sixty miles an hour along a level, straight road, into a truck parked by the side of the road which was clearly visible for a distance of more than five hundred feet. It results that the decree must be reversed and a decree entered for the insurer." Thus the decision in the *Morse* case rested squarely and exclusively on the ground that although the injury arose from a "risk of the street," it did not arise from an "ordinary street risk," because it was "plain that the Legislature" by the use of those words intended to include only a "common, customary or usual risk." That was not a side remark or a mere link in the chain of reasoning, much less *obiter dictum.* It was the sole basis of the decision.

The case at bar is governed by the effect and by the words of the decision in *Morse's Case.* That was a unanimous decision rendered by the full court less than four years ago, after ample argument, and it contains a comprehensive discussion of the precise point now raised. There was no misconception as to what was being done by the court. No arguments have been here adduced not then considered. It does not appear that the law was then "misunderstood or misapplied." The doctrine of *stare decisis* applies to the decision in *Morse's Case.* It requires the interpretation of the words added to G. L. c. 152, § 26, by St. 1927, c. 309, § 3, which is set forth in this dissent. That doctrine is salutary and is the law of this Common-

wealth. Its meaning and application have been stated with some fullness in *Mabardy* v. *McHugh,* 202 Mass. 148, 151–152, and cases collected, and *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 195–196.

The injury to the employee arose, as testified by him and as found by the single member, in this way: As he was driving his automobile on the street in the business of his employer "a sheet of flame came up in front of the car, both inside and out. He states he does not know what happened" after that. The finding of the reviewing board was that while the employee was driving his automobile "a sheet of flame suddenly enveloped the car and caused him to lose control of the car," with consequent injuries. The injury thus resulting cannot rightly be found to be one "arising out of an ordinary risk of the street," but on the contrary was one arising from a rare, extraordinary, uncommon, and exceptional risk. *Morse's Case,* 270 Mass. 276.