CHESTER N. SAWYER'S (dependent's) CASE.

Suffolk.    October 7, 1943. — November 30, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause.*

Evidence warranted findings that an employee was driving a truck of his
    employer upon the employer's business and within the scope of his
    employment when the truck overturned and caught fire, causing the
    employee severe burns from which he died; that his death resulted
    from an injury arising out of and in the course of his employment
    within the workmen's compensation act; and that the presence of a
    rider upon the truck at the time of the accident contrary to a rule of
    his employer was immaterial.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board awarding compensation.

A decree in accordance with the board's decision was
entered by order of *Cabot,* J. The insurer appealed.

*E. R. Langenbach,* for the insurer.

*B. D. Ward,* for the claimant.

Cox, J. This is an appeal of the insurer from a decree
of the Superior Court ordering payment of compensation in
a workmen's compensation case. G. L. (Ter. Ed.) c. 152.
The single member of the Industrial Accident Board found
that on the morning of January 3, 1942, Chester N. Sawyer
was operating a truck of his employer, the Tucker Trans-
portation Company; that the truck overturned and caught
fire, and the deceased received severe burns which resulted
in his death; that the deceased was engaged in the official
business of his employer on the route mapped out for him;
and that he was acting under the direct authorization of his
employer. He found further that the deceased received a
personal injury arising out of and in the course of his em-
ployment while engaged in the duties that his contract
of employment required, and that the ensuing fire, which
caused his death, was a risk contemplated by his employ-

ment within the meaning of the workmen's compensation act. Payments to the deceased's widow were ordered. The reviewing board affirmed and adopted the findings and decision of the single member, and found further that "The employee, in the course of his work operating a motor truck of his employer in the latter's business was peculiarly exposed to injury from street risk, and more particularly to the result which occurred in view of the nature of the cargo he was transporting." *DePietro's Case*, 284 Mass. 381, 385. *Demetrius's Case*, 304 Mass. 285, 286–288.

The claimant in the case at bar, the deceased's widow, had the burden of establishing by a preponderance of the evidence that the injury which caused the death of the employee arose out of and in the course of his employment. *Rozek's Case*, 294 Mass. 205, 207–208. The essential facts need not necessarily be proved by direct evidence but may be established by reasonable inferences drawn from facts shown to exist. *Murphy's Case*, 230 Mass. 99, 101. *Chmielowski's Case*, 301 Mass. 379, 380. The decision of the board is to stand unless it is unsupported by the evidence, including all rational inferences that the testimony permitted. *Rich's Case*, 301 Mass. 545, 547. *Borstel's Case*, 307 Mass. 24, 25, 26.

The insurer contends that the finding that the deceased's injury arose out of and in the course of his employment is not warranted for the reason that it does not appear, either by direct evidence or by facts from which an inference can reasonably be drawn, that the deceased was driving the truck at the time he received his injuries. There was evidence of the following facts: The deceased had been employed by the Tucker Transportation Company for four years immediately preceding his death, and was a capable and dependable man whose work had been satisfactory. On January 2, 1942, he was assigned to drive one of his employer's trucks from Fitchburg to Boston to get a load of oil and to return to Fitchburg with it. At about a quarter to nine o'clock in the evening a man called at his house for him to go to work, and he left about nine o'clock. The assignment from Fitchburg to Boston was a regular one. The

mileage is one hundred miles and "they figure" that it is a five hour trip from Fitchburg to Boston. At that particular time, the deceased was "just going to start in on that run; he had been on it before, but not very 'recently.'" At about a quarter to four in the morning of January 3, one of the deceased's fellow employees, who was operating a truck, met the deceased on the road about three miles "the other side of the Concord barracks, toward Boston." There was no one on the truck with the deceased at that time. At about a quarter to five that morning, the truck that had been assigned to the deceased tipped over on the highway from Boston to Fitchburg, about one mile west of Littleton Common. It appeared that the truck left the road, went up an embankment, tipped over, and rolled back into the road, and that the load of oil, approximately two thousand eight hundred to two thousand nine hundred gallons, became ignited. The truck and roadway became a mass of flames. The truck, with its front headed toward Ayer (that is, in the direction of Fitchburg), was lying on its right hand side, and the window on the left hand side was "all broken." There is a gradual curve in the road where the truck lay, a "sort of an 'S' curve." The road at that point is so narrow that the truck blocked it. At the bottom of an incline the road is straight for about one hundred yards or so, and then there is a "medium" curve to the right, then quite a long curve to the left, and then another curve to the right. On the right there is a bank that has a forty foot slope which is quite steep and comes right down to the road, and it appeared that it was up this bank that the truck went before it tipped over.

The deceased extricated himself from the truck, but was so badly burned that he died in a hospital within a few hours. When asked how it happened, he said: "Oh, I had such a hard time to get out of it; I had to break the window to go through; I thought I never get out." The body of a soldier at "Camp" Devens, who apparently had been burned to death, was found in the cab.

The fellow employee who met the deceased on the road identified the truck that the deceased was driving as one

which he, the witness, had driven every day or every night from January, 1940, to November, 1941. He testified that he drove it at various times from November, 1941, until January, and that he was always making complaints of the "exhaust gas fumes from the motor leaking into the cab. We had trouble with it at different periods from the time the tractor was new until the accident. I got so I did not dare to drive that with the windows closed, even on a cold night on account of you would get these exhaust fumes . . . ." He had last driven the truck a few days before Christmas, and at that time the fumes, which were very strong, affected him. He reported this to the mechanic who thought he had it fixed, but had not. The truck would stay fixed for a month or two and then "break out."

The insurer, in support of its contention, points out that, from the time the deceased was seen by his fellow employee to the time of the accident, it does not appear that anyone saw him driving the truck. There was evidence that at the time the deceased and his fellow employee met, there was no one on the truck with the deceased. If it be assumed that the soldier, whose body was found in the truck, was picked up after this meeting, the insurer contends that it is just as reasonable to infer that the soldier was driving at the time of the accident as to infer that the deceased was, so that an essential fact necessary to support the claimant's case is based merely upon surmise, speculation, and conjecture. *Sponatski's Case*, 220 Mass. 526, 527–528. We are of opinion, however, that the inference was warranted that the deceased was operating the truck at the time he received his injuries. As already pointed out, it could have been found that he was operating the truck an hour before. *Galdston* v. *McCarthy*, 302 Mass. 36, 37, and cases cited. Moreover, there is evidence that the deceased was a capable, dependable and satisfactory workman. The circumstance that the deceased was able to get out of the truck by way of the left hand window, together with the fact that the soldier did not get out, is not without significance. Apart from the fact that the soldier's body was found in the cab, and that there was no one with the deceased on the truck an hour

before the accident, there is nothing to indicate when or where the soldier entered the truck. The deceased "was just going to start in on . . . [the] run" to which he was assigned, although he had been on it before. There was the curve in the road and the evidence as to the condition of the truck which had so often resulted in exhaust gas fumes leaking into the cab. It seems to us that it is not unreasonable in the circumstances to infer that the deceased would not be likely to surrender the performance of his duty of operating the truck to a person in the category of a "hitch hiker." *Payne* v. *R. H. White Co.* 314 Mass. 63, 66, and cases cited. Taking all the factors into account, we cannot say that the board in arriving at the conclusion that the deceased was operating the truck owned by his employer has drawn an inference that no reasonable man could draw. *Von Ette's Case*, 223 Mass. 56, 61. *Rich's Case*, 301 Mass. 545, 547.

The insurer further contends in connection with the point just considered that there is no direct finding in the case that the deceased was driving at the time of the accident, and that, in the absence of such a specific finding, there is nothing to support the decree. But the finding of the single member that "on the morning of January 3, 1942, the deceased employee was operating a truck owned by his employer . . .; that the truck overturned" and caught fire, may fairly be construed to be a specific, direct finding that the deceased was in fact operating the truck at the time of the accident. See *Gowell* v. *Twitchell*, 306 Mass. 482, 486. Moreover, the court will sustain the general finding if possible. *Cahill's Case*, 295 Mass. 538, 539. *Zucchi's Case*, 310 Mass. 130, 133, and cases cited.

There was some evidence that it was a rule of the employer that drivers were not to take on any riders, and that the owner of the company had, "from time to time, asked the boys not to take anybody on." There were "No Rider" signs on some of the trucks prior to January 2, 1942. There was no evidence that the deceased had ever received any personal instructions in this connection from the owner or that the truck which the deceased was driving on the morn-

ing of the accident had a "No Rider" sign. The insurer contends that, as a result of the permissible findings on this evidence, the deceased was acting outside the scope of his employment in picking up a rider and that his dependent is not entitled to compensation. The single member or the reviewing board may have disbelieved the evidence tending to establish that there was any such rule of the company, but there is no specific finding on this point either by the single member or by the reviewing board. We assume in favor of the insurer that there was such a rule in force and that the deceased was not authorized to pick up riders. *Rozek's Case*, 294 Mass. 205, 206–207. *Demetrius's Case*, 304 Mass. 285, 286–288.

It is a general rule that where an employee takes on riders without the express or implied authority of his employer, in the absence of ratification of his act, or the existence of an emergency requiring the act, he is acting outside the scope of his employment. *Broitman* v. *Silver*, 270 Mass. 24, 28, and cases cited. Cases in which this general rule has been applied are those in which it has been attempted to fasten liability on the employer for an injury to the rider resulting from the negligence of the employee and in which it has been held that the employer is not liable. We are of opinion, however, that the rule is not applicable to the case at bar. Here the claimant seeks to recover compensation through the insurer for the death of the employee. In accordance with the rule stated in *Higgins's Case*, 284 Mass. 345, 348, a finding was warranted that the deceased was "doing the duty which he . . . [was] employed to perform" and that there was a "causal connection between the conditions under which the work . . . [was] required to be performed and the resulting injury." *Cahill's Case*, 295 Mass. 538, 543. The fact that at the time of the accident there was a rider on the truck, who had been taken on contrary to the rule, could be found to be nothing more than a condition or attendant circumstance of the accident. *Lindsey* v. *Loebel*, 276 Mich. 242. *Royal Indemnity Co.* v. *Hogan*, 4 S. W. (2d) 93 (Tex. Civ. App.). From what has been said as to the permissible inferences to the effect that

the deceased was driving the truck at the time he received his injury, the inference is not required that the presence of the rider was a positive factor which severed the causal relation between the employment and the injury.

The case at bar is distinguishable from cases in which it has been held that an employee is not entitled to compensation if he is injured while doing something that is no part of his duty or employment, or that is outside any reasonable scope of his employment. *Borin's Case*, 227 Mass. 452, 455. *Rochford's Case*, 234 Mass. 93, 94. *Horton's Case*, 275 Mass. 572, 573–574. *Eifler's Case*, 276 Mass. 1, 2–3, and cases cited. *McManus's Case*, 289 Mass. 65, 67. *Lazarz's Case*, 293 Mass. 538, 540. Compare *Maguskas's Case*, 298 Mass. 80, 81, and cases cited.

Questions relating to matters of evidence were waived by the insurer at the argument.

*Decree affirmed.*