## JOHN V. FLAHERTY'S CASE.

Suffolk.   May 1, 1944. — September 12, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Workmen's Compensation Act,* Injuries to which act applies; Procedure:
   findings by Industrial Accident Board, recommittal, reviewing board.
   *Proximate Cause.   Evidence,* Of experiments.

Findings by a reviewing board in a workmen's compensation case, affirm-
   ing and adopting findings by a single member of the Industrial Acci-
   dent Board of subsidiary facts upon reported evidence and his conclu-
   sion that the employee had failed to sustain the burden of proving
   that a separation of the retinæ in his eyes was caused by exposure
   to naphthalene during his work, disclosed no error.
No ground for recommittal of a workmen's compensation case to the
   Industrial Accident Board appeared where, from the record certified
   to the Superior Court and presented to this court on appeal from a
   decree of the Superior Court, it could be determined with reasonable
   certainty whether correct rules of law had been applied to facts which
   properly could be found.
No error was disclosed in a refusal by a reviewing board of the Industrial
   Accident Board, which affirmed and adopted the findings of a single
   member, to act upon a motion that the reviewing board consider cer-
   tain evidence of tests and experiments which at first had been admitted
   by the single member de bene and then had been excluded by him on
   the ground that they served no useful purpose in the case since "the
   facts and circumstances are entirely dissimilar and consequently the
   results of the tests and experiments cannot be applied to this case."

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board denying a claim under the work-
men's compensation act.

The reviewing board affirmed and adopted the findings
and decision of the single member.

In the Superior Court, a decree was entered by order of
*Swift,* J., dismissing the claim.

*W. H. Taylor,* (*J. E. Hannigan* with him,) for the claimant.
*G. A. Murphy,* for the insurer.

WILKINS, J.   The employee appeals from a decree of the
Superior Court dismissing his claim for compensation in

conformity with the decision of the Industrial Accident Board.

"It is 'the duty of the Industrial Accident Board to make such specific and definite findings upon the evidence reported as would enable this court to determine whether the general finding should stand.' . . . As the reviewing board merely affirmed and adopted the findings of the single member, we must look at those to determine their sufficiency." *Luongo's Case,* 313 Mass. 440, 441.

The single member made the following findings: On September 8, 1937, the employee, a longshoreman, was engaged in unloading a cargo of crude naphthalene from a steamship to freight cars on a sidetrack on a pier. The naphthalene came in burlap bags weighing from one hundred fifty to two hundred pounds. Some of the naphthalene was wet and lumpy, and some was loose and "sandy like." A winchman on the ship operated a canvas sling in which were placed three or four bags at a time. The employee was on the pier to handle loads as they came over from the ship. It was his duty to steady the load, to help place it on a hand truck, and to wheel it and pile the bags inside the cars. At about 3 P.M., while the employee was standing on the pier beside one of the cars, a load of four bags "came over fast," and struck the car. The load fell apart, two bags broke, "considerable of the contents fell on top of him," some good sized lumps landed on his head, and his face, eyes, and neck were covered with naphthalene. "He . . . alleges that during the seven or eight hours that he worked on this job he was exposed to considerable dust particles and fumes of naphthalene and that some got into his mouth and eyes." The unloading was completed at about 4 P.M. and from 7 P.M. to 11:30 P.M. he unloaded steel. There was no work the next day, but the following day he worked seven and one half hours. He was out of work three days, but worked full days September 14, 15, and 16, and part of a day September 17. He has not worked since. "He has blindness in both eyes due to the separation of the retinæ."

: The single member then summarized the extensive medical testimony for the employee and the insurer. The opinion

of Dr. Regan, an eye specialist called by the employee, was
to the effect that the latter suffered from acute retinitis in
both eyes with separation of the retinæ due to exposure to
naphthalene on September 8.   Dr. Walker, a biochemist
called by the employee, testified to his opinion that the
latter's blindness was due to exposure to naphthalene on
September 8.   Dr. Crawford, a dermatologist called by the
employee, testified to skin conditions of the employee which
were, in his opinion, due to exposure to naphthalene.   On
the other hand, three eye specialists, Dr. Verhoeff, Dr.
Sachs, and Dr. Heffernan, and a toxicologist, Dr. Boos,
were called by the insurer.   The eye specialists testified
that the exposure to naphthalene was not the cause of the
separation of the retinæ, but that the condition of the right
eye was probably due to having been struck by a snowball
in the winter of 1936, and that the condition of the left eye
was probably due to having been struck subsequent to
September 8 by two bags of coffee which fell on his head and
knocked him down on a concrete surface.

The single member found that the employee had for
many years suffered from nearsightedness, and that there
had been a partial separation of the retina in the left eye;
that naphthalene in its crude form gives out some odor,
but is not very volatile and is not soluble; that in order
to cause toxicity and poison in the human system sufficient
to cause separation of retinæ in both eyes, it would be
necessary to absorb a very large dose, which within twenty-
four hours would cause destruction of the elements of the
blood, affect the kidneys and liver, and produce abdominal
pain; and that immediately after September 8, 1937, the
employee was quite well and worked several days with
usual efficiency.   The decision concluded: The "exposure
to napthalene, to which this employee was subjected on
September 8, 1937, was not sufficient to cause the separa-
tion of retinæ in his eyes.   The evidence that trauma
caused separation of retina in either of employee's eyes is
far from being definite and impressive so as to merit much
weight and credence.   At best it can be said that some small
lumps fell on top of him, some of which landed on his head

and others on his shoulders and arms. In order for trauma to be a causative factor in producing a separation of retina in the human eye, it would necessarily have to be of much greater and more severe degree than we have it here in this case. Therefore, upon all the evidence, I find and rule that the employee has failed to sustain the burden of proof that his condition is causally related to any injury received in the course of or arising out of his employment."

The burden of proof was on the employee to establish that his injury arose out of and in the course of his employment. *Rozek's Case*, 294 Mass. 205, 207–208. *Sawyer's Case*, 315 Mass. 75, 76. *Judkins's Case*, 315 Mass. 226, 230. "It is settled that the decision of the board 'is to stand unless it is unsupported by the evidence, including all rational inferences that the testimony permitted.' *Sawyer's Case*, 315 Mass. 75, 76 and cases cited." *Amon's Case* 315 Mass. 210, 214. *Griffin's Case*, 315 Mass. 71, 73. The employee's theory was that naphthalene got into his eyes, mouth, and nose, entered into the blood stream, and was carried to the eyes. Neither the single member nor the reviewing board were obliged to accept the testimony of the employee's medical experts, which was in conflict with that of the insurer's experts. *Ricci's Case*, 294 Mass. 67, 68. *Amon's Case, supra*, at page 215, and cases cited. The evidence showed that the employee had worked one day on naphthalene, and, according to his own medical experts, his was the only case in medicine, so far as they could discover, where a man received a separation of the retinæ from naphthalene. An examination of all the evidence, both as to absorption into the blood stream and as to trauma due to having been struck with pieces of naphthalene, satisfies us that it cannot be rightly said that the finding that the burden of proof had not been sustained by the employee was unwarranted. See *Barbagallo's Case*, 243 Mass. 86; *Seelig's Case*, 280 Mass. 466. Contrary to the employee's contention, this is not a case for recommittal, as in *Mathewson's Case*, 227 Mass. 470, or *Demetrius's Case*, 304 Mass. 285. The Superior Court and this court can determine with reasonable certainty from the record of the

reviewing board whether correct rules of law have been applied to facts which properly could be found. See *Di Clavio's Case*, 293 Mass. 259, 261–262, and cases cited.

What we have said renders it unnecessary to set forth in detail the employee's numerous contentions, which we have fully examined, that the findings were erroneous in various respects and not supported by the evidence.

The single member's decision stated: "Considerable evidence relating to tests and experiments with napthalene on rabbits was admitted de bene. I am satisfied that such tests served no useful purpose in this case, as the facts and circumstances are entirely dissimilar and consequently the results of the tests and experiments cannot be applied to this case. I reject this evidence entirely. The five requests contained in 'Motion of Insurer' are hereby granted." The so called requests were motions that the evidence relating to experiments on rabbits' eyes and the opinions of Dr. Regan and Dr. Walker in so far as they were based thereon be excluded and that the same be disregarded as immaterial. At the hearing before the reviewing board the employee filed a motion in substance asking for rulings that this evidence be considered. With respect to this motion the decision contained the following: "The reviewing board take no action on the above-quoted motion of counsel for the employee relative to certain rulings, since all necessary findings of fact have been made and affirmed in the case." In this there was no error. The determination whether the conditions were sufficiently similar to make the experiments of any value is a matter resting in the sound discretion of the reviewing board. *Baker* v. *Harrington*, 196 Mass. 339, 341. *Field* v. *Gowdy*, 199 Mass. 568, 574. *Biancucci* v. *Nigro*, 247 Mass. 40, 43. *Pepper* v. *Old Colony Trust Co.* 252 Mass. 532, 535. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 521–522. *Guidara* & *Terenzio Inc.* v. *R. Guastavino Co.* 286 Mass. 502, 503–504. *Robitaille* v. *Netoco Community Theatre of North Attleboro, Inc.* 305 Mass. 265. The experiments being incompetent as substantive evidence, all testimony as to their nature, even if offered under the guise of a reason for the opinions of the witnesses which

had been received, could be excluded properly.  *Common-wealth* v. *Tucker,* 189 Mass. 457, 479.  See *Hunt* v. *Boston,* 152 Mass. 168, 171;  *Peirson* v. *Boston Elevated Railway,* 191 Mass. 223, 233–234;  *Commonwealth* v. *Sinclair,* 195 Mass. 100, 108;  *Greenspan* v. *County of Norfolk,* 264 Mass. 9, 12;  *Downey* v. *Union Trust Co.* 312 Mass. 405, 416–417.  Compare *Roosa* v. *Boston Loan Co.* 132 Mass. 439.

At the hearing before the reviewing board the employee filed a "motion to recommit and for rehearing," which was denied.  The employee has not argued any alleged error in the denial of this motion, which involved no ruling of law to be reviewed.  *Lopes's Case,* 277 Mass. 581, 587.

*Decree affirmed.*