GEORGE DEMETRE'S CASE.

Worcester.    September 23, 1947. — December 3, 1947.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Serious and wilful misconduct of employee; Incapacity; Procedure: findings by Industrial Accident Board. *Agency*, Scope of authority or employment. *Words*, "Rule and find."

The words "rule and find" appearing in the report of a single member of the Industrial Accident Board imported that the conclusion stated was permissible as a matter of law and was found as a matter of fact.

Findings by the Industrial Accident Board in a case under the workmen's compensation act, that conduct of the employee in hitting a tangled belt on a machine operated by a fellow employee was an attempt to untangle the belt in order to help the fellow employee, that assistance to the fellow employee on previous occasions was known to and approved by the employee's superiors, and that, although the employee never had attempted to fix the belt before during his three weeks of employment, the means adopted by him were not unreasonable, justified a conclusion that injuries, sustained when the belt caught and broke his arm, arose out of and in the course of his employment.

An employee's striking a tangled belt on a machine in an attempt to right it, although perhaps "somewhat negligent," did not require a conclusion, in a proceeding for workmen's compensation, of serious and wilful misconduct on the part of the employee, who sustained injuries when his arm became caught in the belt.

In a workmen's compensation case, a conclusion by the Industrial Accident Board, founded on evidence, including a report of an impartial physician, heard by a single member and included in a report filed by him more than a year after the employee had sustained a serious fracture of his left forearm, that he "has been totally disabled" since

the date of his injury "and continuing," was not shown to have been unwarranted as a matter of law, although the medical evidence was all to the effect that, while the employee was unable to do work with his left arm at the time of the hearing and of the medical report and was incapacitated for his former employment, some other, lighter employment might be open to him, where it also appeared that, within a few weeks before the hearing and after his last examination by his own physician, he twice had sought and been refused such lighter work.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board in a proceeding under the workmen's compensation act.

The case was heard by *Giles*, J.

*P. L. Hinckley*, for the insurer.

*F. Prestera*, for the claimant, submitted a brief.

WILKINS, J. The employee, a filling carrier employed by a cloth manufacturer, suffered a fractured arm by hitting with his hand a tangled belt on a machine operated by a fellow employee. In the Superior Court a decree was entered declaring that the injury arose out of and in the course of his employment and that the injury was not caused by the serious and wilful misconduct of the employee, and ordering the payment of compensation. The insurer appealed.

The single member found that the employee was entitled to compensation, and the reviewing board affirmed and adopted the findings and decision of the single member. We must look at the findings of the single member to determine the sufficiency of the findings of the reviewing board. *Luongo's Case*, 313 Mass. 440, 441. *Flaherty's Case*, 316 Mass. 719, 720. The words "rule and find," wherever they appear in the findings, import that the conclusion stated is permissible as matter of law and is found as matter of fact. *Roney's Case*, 316 Mass. 732, 734.

The findings of the single member are attacked by the insurer as vague, indefinite, and amounting to a mere conclusion of compensability. It is argued that it is impossible to determine with reasonable certainty whether correct rules of law have been applied. See *Di Clavio's Case*, 293 Mass. 259, 261–262, and cases cited. There is no doubt that the findings leave much to be desired. But

if we disregard those statements which are challenged as not being clear cut findings of fact, the other findings are adequate to enable us to determine whether correct rules of law have been applied.

The single member's decision contained the following: "This employee was injured when he attempted to untangle a belt and put it back on a machine which was being operated by a fellow employee. . . . I find that the fellow employee in the course of her work operated the machine for the purpose of unwinding the bobbins of yarn, that . . . it was part of her work; that the injured employee assisted her at time[s] in her other duties with the knowledge and consent of the employer; that the employee's work and that of his fellow employee was [*sic*] interrelated in that it was their duty to keep their respective weavers supplied with yarn and thus keep production moving; that this employee was asked to do other work for some of the other employees and he complied and this was done without objection on the part of the employer, indicating consent and willingness that the employee keep 'busy'; . . . that this employee did not incur a risk beyond the reasonable scope of his employment . . . [;] that he was injured as a result of an 'incident' in the course of his employment which was not altogether outside of any reasonable exercise of his employment . . . [;] that this employee did not wilfully violate a rule; that in his attempt to fix the belt he may have been somewhat negligent . . . [;] that this employee was not guilty of serious and wilful misconduct; that he sustained an injury arising out of and in the course of his employment on October 15, 1945; and that he has been totally disabled since that date and continuing."

Before considering the insurer's contention that some findings are without support in the evidence, we recite certain undisputed facts. The employee, who was twenty-four years of age, began work for the employer on September 28, 1945, less than three weeks before his injury. As a filling carrier, he had the duty to distribute filling, which was yarn wound around bobbins, among the weavers. He

carried it in baskets from bins in the stock room on the fifth floor to the weaving room on the second floor. On October 15, 1945, he went to the stock room to look for filling, but there was none. He there saw Wanda Optaka, a yarn girl, who told him that the filling could not be used and would have to be put on the stripper to be unwound. The stripper, a small machine on the fifth floor, received power by means of a belt driven by a pulley with overhead shafting. At the time the belt was "off" the machine. By direction of a foreman, one Miller, another employee, tried to put the belt on, but it became tangled in the shaft leaving a loop which hung down. As Miller was leaving to report the condition, the employee slapped the belt with his hand, and his left arm became caught in the loop, lifting him from the floor and fracturing the arm in three places.

The insurer contends that there was no evidence that the employee "attempted to untangle" the belt. To the contrary, it seems to us that this finding was clearly warranted from the mere factual statement of the accident as well as from the employee's testimony. He testified that "he thought maybe he could fix it, get the filling in and keep the weavers going downstairs"; that the "belt was flapping on the shaft"; that "if you give it a swing with your arm, it will come even again so he tried to hit it with his left hand and . . . somehow it caught his arm"; that he "just hit it once and if it did not go around, he was going to stop"; and that he "hit the belt just once, he tried to straighten it out."

The insurer further contends that the finding that the injury arose out of and in the course of the employment was not warranted. We do not accept that contention. This court will sustain the general finding of the reviewing board if possible. *Zucchi's Case,* 310 Mass. 130, 133. *Sawyer's Case,* 315 Mass. 75, 79. *Bajdek's Case,* 321 Mass. 325, 326. Wanda Optaka testified that she asked the employee to help her unwind the bobbins and he "volunteered" to help her. There was testimony from her and from the employee that he had helped her strip the bobbins on a previous occasion. She also testified that the "boss"

saw the employee help her, and that she had a lot of people help her at different times and the "bosses" knew it. The employee when asked, "It was not part of your job to straighten the belt out?" testified, "I guess it was part of my job; yes, it was."

It is urged that the employee voluntarily went outside the reasonable scope of his employment and incurred a danger of his own choosing. The insurer relies on such cases as *Koza's Case*, 236 Mass. 342, *Eifler's Case*, 276 Mass. 1, and *Roberts's Case*, 284 Mass. 316. But we do not regard them as controlling. While the employee had never attempted to fix the belt before during his brief period of employment, he was not performing an act he had been forbidden to do, as in *Borin's Case*, 227 Mass. 452, 455, *Lazarz's Case*, 293 Mass. 538, and *Donovan v. Johnson*, 301 Mass. 12, 13. Compare *Brady's Case*, 256 Mass. 267. His superior knew that he was aiding the yarn girl. We cannot say that his attempt to restore the machine to a state of usefulness and the means adopted were unreasonable and so unrelated to the service he was employed to render that, as matter of law, the injury did not arise out of and in the course of his employment. We think that, of our decisions, the present case most closely resembles *Ferreira's Case*, 294 Mass. 405, even though in the latter case the specific thing the employee was doing when injured was an act he had done before. We cite examples of cases in other jurisdictions, which, in general, support the view we take. *Houser v. Young*, 247 Ala. 562. *Ocean Accident & Guarantee Corp. v. Pallero*, 66 Colo. 190. *Hartz v. Hartford Faience Co.* 90 Conn. 539, 541–542. *Young v. Mississippi River Power Co.* 191 Iowa, 650. *Bushing v. Iowa Railway & Light Co.* 208 Iowa, 1010. *Ramczik v. Winona Machine & Foundry Co.* 174 Minn. 156. *Ransdell v. International Shoe Co.* 329 Mo. 47. *Bernier v. Greenville Mills, Inc.* 93 N. H. 165. *Associated Employers' Reciprocal v. State Industrial Commission*, 82 Okla. 229. *Conley v. Pittsburgh Coal Co.* 157 Pa. Super. Ct. 567. *Wegimont v. Argonne Worsted Co.* 69 R. I. 360. Compare *Miller v. C. F. Mueller Co.* 132 N. J. L. 540.

There was no error of law in the finding that the employee, although possibly negligent, was not guilty of "serious and wilful misconduct." G. L. (Ter. Ed.) c. 152, § 27, as amended. We need not repeat what we have recently said in *Scaia's Case*, 320 Mass. 432, which, although a case arising under § 28, as amended, contains a full discussion of the pertinent authorities. See also *Shute's Case*, 290 Mass. 393; *Maguskas's Case*, 298 Mass. 80.

The insurer argues that a finding of total incapacity continuing beyond August 20, 1946, was not warranted. The only medical witness was Dr. Mulcahy, the employee's physician, who testified in part as follows: The employee sustained a compound comminuted fracture of both bones of the left forearm and a complete comminuted fracture of the left humerus. He was sent to the hospital where Dr. Mulcahy with the help of other doctors cleared up the wounds to the ulna and radius, sutured them, reduced the fracture of the humerus and put on a plaster cast. Later in two different operations open reduction of all three fractures was done. In June, 1946, there was still another operation to remove wires from the forearm. The witness last treated the employee on August 20, 1946. On September 27, 1946, the date of the hearing, there was practically no rotation, supination, or pronation of the forearm. There will be a permanent partial disability in that arm, but another operation can be done to give partial pronation and supination. "He is not totally disabled. He could do any kind of job just requiring the use of his right arm, such as a watchman's job." In the opinion of the witness, the employee could not lift baskets weighing one hundred twenty pounds, but could lift a basket weighing fifty or sixty pounds once or twice in an eight hour shift if the basket had a handle. He has trouble picking up things, "he has not full strength, he has not a complete grasp."

The employee testified that the filled baskets weighed one hundred twenty pounds and did not have handles, and that he used to carry nine or ten baskets in a day; that he applied to the overseer of the spinning department for a job about three weeks before the hearing, but was told

"it was not open"; that he wanted a watchman's job, but not that of filling carrier; and that he knew of nothing else he could do. The superintendent testified that the employee asked him for a job on August 28, 1946. In an impartial report dated December 3, 1946, Dr. Sargent said: The employee's "condition is the result of the long necessary period of immobilization . . . . This man is incapacitated for work which requires a full range of motion in his left elbow and wrist. In view of the fact that he is right-handed and since forced motions of the left elbow and left wrist are not especially painful, I believe this man is able to do considerable work with his right arm. I suggest he try out such work and see what happens."

Whether an injury has resulted in total incapacity is usually a question of fact. _Hummer's Case_, 317 Mass. 617, 624. _Frennier's Case_, 318 Mass. 635, 639. In the present case it cannot be said that the finding is legally unsupportable as wholly without evidence upon which it can rest. _Fennell's Case_, 289 Mass. 89, 95. See _Sullivan's Case_, 218 Mass. 141; _Duprey's Case_, 219 Mass. 189; _Percival's Case_, 268 Mass. 50. The employee could no longer do the work of a filling carrier. His efforts to obtain lighter work were undoubtedly slight, and seem to have consisted of two applications to his former employer. Both applications, however, were subsequent to August 20, 1946, and were within a few weeks of the hearing before the single member. We are not called upon to decide whether after a longer period of inactivity without greater effort to obtain employment the same finding would be permissible. Compare _Davis's Case_, 304 Mass. 530, 534–535.

The insurer also contends that "the employee is not entitled to unemployment compensation and workmen's compensation." This issue was not raised before the single member or before the reviewing board, and no facts relating to the question were found. We cannot consider it. _Rich's Case_, 301 Mass. 545, 547. _Akins's Case_, 302 Mass. 562, 566. _Gustafson's Case_, 303 Mass. 397, 401.

_Decree affirmed._